IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY ELLEN HANNIGAN

Plaintiff,

3:08-cv-01349-PK

FINDINGS AND RECOMMENDATION

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

PAPAK, Magistrate Judge:

Plaintiff Mary Hannigan seeks judicial review of the Commissioner's decision declining to reopen her prior application for SSI benefits. This court has jurisdiction over Hannigan's action pursuant to 42 U.S.C. § 1383(c). For the reasons set forth below, the Commissioner's decision should be affirmed.

## BACKGROUND

This case has a complicated procedural history that I simplify considerably for the purposes of this review. In February 2003, Hannigan filed an application for disability insurance

benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI alleging disability beginning in October 1996. Tr. 18, 840. The Commissioner denied both Hannigan's DIB application and her SSI application around May 20, 2003, informing her in a letter that she had 65 days to appeal her denial. (Ford Decl., #16-2, at 3 and Ex. 1. at 4-7.) Hannigan did not appeal either denial.

In January 2005, Hannigan again applied for disability insurance benefits under Title II and SSI under Title XVI. Tr. 18, 873-881. The Commissioner denied both applications, but Hannigan requested reconsideration and a hearing only on the SSI application denial. Tr. 23, 51. Hannigan obtained counsel in May 2005. In April 2007, an ALJ issued an unfavorable ruling on her 2005 SSI application. Tr. 51-63. The Appeals Council vacated the April 2007 decision and remanded her case for another hearing. Tr. 67-69. After reviewing the record without holding a new hearing, an ALJ granting her application for SSI benefits as of her 2005 application, but declining to reopen her 2003 SSI application. Tr. 18-23. The ALJ reasoned that Hannigan failed to establish good cause to reopen her 2003 SSI application because she did not submit new, material evidence and the record did not show on its face that the prior decision was in error. Tr. 18. The ALJ also considered Social Security Ruling 91-5p governing when a mental impairment may serve as good cause to reopen, but found that it did not apply. *Id.* The Appeals Council denied Hannigan's request for review. Tr. 6-13. Hannigan then filed this action.

**STANDARDS OF REVIEW**

A claimant may seek judicial review of "any final decision ... made after a hearing to which he was a party." 42 U.S.C. § 405(g); see also 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing ... shall be subject to

judicial review ... to the same extent as the Commissioner's final determinations under section 205 [42 USCS § 405]." Because denial of a motion to reopen is a discretionary decision by the Commissioner, it is not final and, thus, is not generally reviewable by a district court. *See Udd v. Massanari*, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (citing *Califano v. Sanders*, 430 U.S. 99, 107-109 (1997)).

The Supreme Court, however, recognized an exception to non-reviewability of a non-final decision in *Sanders*. There, the Court noted that federal subject matter jurisdiction exists where a claimant challenges the denial of a petition to reopen on constitutional grounds. *Sanders*, 430 U.S. at 109 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."). The Ninth Circuit applies the *Sanders* exception "to any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (citations omitted).

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the Commissioner's conclusion." *Id., citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**DISCUSSION**

This court has previously determined that Hannigan's complaint alleges a colorable constitutional claim asserting that the ALJ violated the Due Process Clause by denying her request to reopen her 2003 SSI application. (Am. Compl., #30, at 1-2); (Findings and Recommendation, #42, at 6-7); (Opinion and Order, #53.) Thus, the ALJ's non-final decision declining to reopen Hannigan's 2003 SSI application is reviewable.

In general, an SSI application may be reopened within 12 months of the notice of initial determination for any reason or within 24 months of the notice of the initial determination if good cause is shown. 20 C.F.R. § 416.1488. Hannigan did not request her 2003 SSI application be reopened within two years. Social Security Ruling 91-5p, however, provides an exception to these time limits for an individual whose mental incapacity prevented her from timely requesting review of an adverse determination and who lacked a legal representative at the time. SSR 91-5p, *available at* 1991 WL 208067. Thus, SSR 91-5p permits a claimant to show good cause for reopening an application "regardless of how much time has passed since the prior administrative action . . . ." *Id.*

To demonstrate mental incapacity for the purposes of showing good cause to reopen an

application, the claimant must present evidence that "establishes that he or she lacked the mental capacity to understand the procedures for requesting review." To determine whether a claimant lacked the mental capacity to understand review procedures, SSR 91-5p instructs the Commissioner to consider four factors "as they existed at the time of the prior administrative action": (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; and (4) any mental or physical condition which limits the claimant's ability to do things for him/herself. *Id.* "The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor of the claimant." SSR 91-5p. Indeed, a SSR 91-5p determination must be reversed where the ALJ fails to resolve any reasonable doubt in the claimant's favor. *Udd v. Massanari*, 245 F.3d 1096, 1101 (9th Cir. 2001). The Commissioner's failure to adhere to SSR 91-5p amounts to a Due Process Clause violation. *See Klemm v. Astrue*, 543 F.3d 1139, 1145 (9th Cir. 2001); *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997).

Here, Hannigan focuses on the fourth factor listed in SSR 91-5p and argues that the ALJ improperly ignored evidence in the record showing that she lacked the mental capacity to understand how to seek review of her denied 2003 SSI application. Specifically, Hannigan points to several mental health issues, including borderline personality disorder, major depression, and suicidality, that she has struggled with since at least October 1996. The focus of the Commissioner's analysis under SSR 91-5p, however, is a claimant's mental capacity "at the time of the prior administrative action." SSR 91-5p. Consistent with that instruction, courts have limited their review of factors suggestive of mental incapacity to the time period during which a claimant may seek review. *See, e.g., Atkins v. Astrue*, No. C 10–0180 PJH, 2011 WL 1335607,

at *5 (N.D. Cal. Apr. 7, 2011.) Therefore, while I briefly review Hannigan's broader mental health history, I focus on evidence concerning Hannigan's mental capacity during the 65 days between the Commissioner's denial of Hannigan's 2003 SSI application on May 20, 2003 and the expiration of Hannigan's time to appeal that determination, on approximately July 25, 2003.

Hannigan apparently has a long history of "unstable interpersonal relationships and unstable affect, along with multiple suicide attempts." Tr. 503. In November 1996, she was hospitalized after attempting to commit suicide by overdosing on heroin. Tr. 497, 502. Her psychiatric diagnoses on discharge were major depressive episode, borderline personality disorder, and she was assessed with a Global Assessment of Functioning (GAF) score of 30. Tr. 497. Other than a few visits in early 1997, there is no evidence in the record that Hannigan sought psychiatric treatment between 1997 and 2003.

On January 30, 2003, about five months before the Commissioner denied Hannigan's 2003 SSI application, Hannigan again attempted suicide by taking six tablets of Flexaril and one tablet of Vicodin while she was intoxicated by alcohol, after having an altercation with staff at a inpatient alcohol treatment facility. Tr. 252. Hannigan was admitted to the psychiatric ICU for monitoring, but the record does not indicate whether she was diagnosed with any psychiatric disorders or directed to any mental health treatment before being released. Tr. 253.

About two weeks later, on February 12, 2003, Hannigan again attempted suicide by taking a mixture of multiple medications. Tr. 244. She reported being despondent over the discontinuation of her drug and alcohol treatment services, her inability to find work, and the resulting financial effects of her unemployment. Tr. 245. Hannigan reported that in the past she did quite well in school, received a bachelors degree in computer science, and had been a

MENSA member. Tr. 247. After her internet business failed and she could not find other work, she exhausted savings from an insurance settlement and unemployment benefits, leaving her and her husband destitute. Tr. 249. A mental status exam in the hospital revealed that Hannigan was pleasant and cooperative, fully oriented with an excellent fund of knowledge, still somewhat depressed but in a normal mood, and did not display current suicidal ideation, hallucinations, or delusions. Tr. 247. Hannigan received diagnoses of status post suicide attempt, major depression, and alcohol dependence, with a GAF of 50 and was discharged with a plan to pursue counseling and continue attending AA meetings. Tr. 244, 248. An agency consultative psychologist reviewed Hannigan's hospitalization records from February 2003, as well as earlier medical records from June 2001 to December 2002, and found "insufficient evidence" of a "medical disposition." Tr. 197.

The record thereafter is silent until September 18, 2003, four months after Hannigan's May 2003 SSI denial, when Hannigan hospitalized herself complaining of difficulty interpreting words and expressing herself, as well as an inability to regulate her sleep cycle. Tr. 443-449. Hannigan reported first experiencing these symptoms a few weeks earlier after she turned her ankle in the bathroom, but the symptoms intensified only five to six days prior. Tr. 443. Hannigan's husband also indicated that her mental status had "drastically changed" in the past two days and Hannigan also reported losing her appetite over the last several days. *Id.* A mental status exam found Hannigan unable to recall the date and exhibiting a tangential thought process with perseveration on her inability to communicate articulately, although other aspects of the mental status exam appeared normal. Tr. 444. The attending physician described Hannigan's condition as an "acute onset of altered mental status, specifically with the decrease in ability to

communicate and articulate appropriately." *Id.* The doctor noted, however, that Hannigan had negative head CT scans, normal oxygen saturation, no history of trauma, no signs or symptoms of infection, and negative urine drug screen. Tr. 444-445. Hannigan's physicians posited two potential causes of Hannigan's symptoms: hepatic encephalopathy (a brain dysfunction syndrome arising from advanced liver failure) or toxic metabolic syndrome related to drug interaction. Tr. 445. Hannigan's symptoms apparently resolved spontaneously and she was discharged. Tr. 440. At a doctor's visit a month later, she was "doing well," and it was never determined whether she truly had encephalopathy. *Id.*

Even resolving reasonable doubts in favor of Hannigan, the records from these hospitalizations do not indicate that Hannigan "lacked the mental capacity to understand the procedures for requesting review" of her May 2003 SSI denial in the two months following that decision. SSR 91-5p. In early 2003, Hannigan suffered from depression and alcohol dependence, both of which are mental conditions that theoretically could limits one's "ability to do things for him/herself," as contemplated by the fourth factor in SSR 91-5p. Yet the evidence in the record does not show these conditions significantly limited Hannigan's ability to care for herself such that it would be reasonable to infer that she lacked sufficient mental capacity to understand available review procedures. Admittedly, Hannigan became despondent and intoxicated to the point of attempting suicide, which shows some limitations in her capacity for self-care. Yet Hannigan's episodic suicidality does not necessarily implicate her ongoing ability to understand and act on written instructions like those concerning her right to appeal her SSI denial. Indeed, in February 2003, Hannigan had sufficient mental capacity to parent her 16-year old son, at least until she kicked him out of the house because of his violent behavior, and receive

and understand the impact of a letter from her substance abuse treatment provider discontinuing her services. *Id.* Mental status examination in February 2003 also showed Hannigan to be alert, responsive, with ab excellent fund of knowledge, albeit still somewhat depressed. Finally, Hannigan's unexplained altered mental status for which she sought hospitalization in mid-September 2003 cannot reflect on her mental capacity in May and June 2003. That episode of altered mental status began, at the earliest, several months after the period during which Hannigan claims mental incapacity, and resolved itself spontaneously.

This case differs from others in this circuit where courts have found sufficient evidence of mental incapacity that a claimant is unable to understand the administrative review procedures during the period for seeking review of the Commissioner's decision. For example, in *Udd v. Massanari*, the Ninth Circuit reversed an ALJ's determination that claimant did not lack the mental capacity to understand the procedures for requesting review because, although his mental impairment of schizophrenia prevented him from working, it did not totally incapacitate him, as evidenced by his "ability to live by himself and have relationships, and by his babysitting activities. . . ." 245 F.3d at 1097. The Court observed, however, that claimant was "severely limited [in] his ability to do things for himself" and "lacked the mental capacity to understand the procedures for requesting review under SSR 91-5p." *Id.* at 1100-1101. In the two years leading up to the Commissioner's decision, the claimant "exhibited symptoms of disorganization, needed assistance getting dressed, experienced hallucinations, and exercised poor compliance with his medication." *Id.* at 1100. He lived with his mother for some time, and after he moved out, his therapist advised his mother to check up on him daily. *Id.* His mother also took care of all his important mail and made sure that he paid his bills and kept his bank account in order. *Id.* at

1101. The week before the Commissioner's decision, claimant was admitted to the hospital experiencing auditory hallucinations, "bizarre episodes," and poor judgment and insight. *Id.* at 1100. The claimant then left the hospital against medical advice, missed his next outpatient appointment, and two months later was still failing to consistently take his medication. *Id.* Hannigan exhibited none of those indicia of diminished mental capacity or self-care.

In fact, Hannigan's mental capacity during the period when she could have appealed her SSI denial was even more robust than that of the claimant's in *Evans v. Chater*, 110 F.3d 1480 (9th Cir. 1997), where the Ninth Circuit affirmed the Commissioner's finding that the claimant possessed sufficient mental capacity to understand review procedures. In *Evans*, claimant was diagnosed with alcoholism and depression, exhibited test scores highly suggestive of impaired brain functioning, and was found to have reduced concentration but fair judgment. 110 F.3d at 1484. A few months before the first of the Commissioner's two decisions, the claimant was suffering a low level of chronic depression, but had a linear and coherent though process, and no evidence of a thought disorder. *Id.* Two months before the Commissioner's second decision, claimant was suffering from "major depression," was dysphoric, had a flat affect, and demonstrated psychomotor retardation. *Id.* The Appeals Council justified the ALJ's findings by noting that claimant's "mental status exams revealed full orientation, average range of intelligence, no signs of thought disorder, mild degree of cognitive impairment involving recent and long-term memory, the ability to understand simple questions and that [he was] capable of handling [his] own affairs." *Id.*

Although the claimant in *Evans* did not attempt to commit suicide, as here, the claimant's mental status exams showed even more indications of cognitive impairment than were noted with

Hannigan. Further, Hannigan's college education and apparently high level of intelligence suggests she was even more capable of understanding Social Security review procedures than the claimant in *Evans*. Thus, as in *Evans*, Hannigan presents insufficient evidence of her inability to understand the Social Security review procedures to satisfy the good cause standard set forth in SSR 91-5p.

In sum, the Commissioner properly concluded that Hannigan's 2003 SSI application should not be reopened. The ALJ applied SSR 91-5p, the correct legal standard, and there is substantial evidence in the record indicating that Hannigan possessed sufficient mental capacity to understand the procedures for requesting review of her 2003 SSI denial.

**CONCLUSION**

For the reasons described above, I recommend that the Commissioner's decision not to reopen plaintiff's 2003 SSI application be affirmed and judgment be entered.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 18th day of April, 2012.

Paul Papak

Honorable Paul Papak
United States Magistrate Judge